# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CHARLYNDA BENJAMIN,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 1:20-cv-002466-CC-RDC |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

This case arises out of a federal injunction imposed on Experian from the long-running *White-Hernandez* class action and presents the question of whether it is reasonable as a matter of law for Experian to follow that order. The agreed order sets forth a carefully devised set of procedures for reporting debts that predate a consumer's Chapter 7 bankruptcy in the narrow circumstance where neither the creditor nor the debtor has informed Experian if a debt was discharged. It requires Experian to assume that certain types of debts are discharged while making the opposite assumption about others, like Plaintiff's, reporting in a "current" and positive status at the time of the bankruptcy filing.

The answer is, clearly, yes—it is reasonable for Experian to abide by a binding court order; the order reasonably defaults to the reporting most likely to benefit the consumer in the face of uncertainty about a debt's discharge status; and Experian reasonably developed robust procedures to ensure that current-status (at the time of bankruptcy filing) debts update to report as discharged if the consumer stops paying. If there is anything unreasonable here, it is Plaintiff's lawyer-directed decision to not alert Experian to its allegedly inaccurate reporting, bypassing a dispute procedure that Congress, courts, and the parties and judge in *White-Hernandez* all recognized as crucial to the Fair Credit Reporting Act's ("FCRA") goal of achieving a fair and accurate credit-reporting system.

## **BACKGROUND**

## I.      SECTION 1681E(B) OF THE FCRA

The FCRA's reasonable-procedures requirement, § 1681e(b), chiefly requires CRAs to "accurately transcribe, store and communicate consumer information received from a source that it reasonably believes to be reputable, in a manner that is logical on its face." Fed'l Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act, Jul. 2011*, 59 (*available at* 2011 WL 3020575); *see also Aslani v. Corelogic Credco, LLC*, No. 1:13-CV-2635-CC-LTW, 2014 WL 12861199, at *4

(N.D. Ga. Aug. 18, 2014), *report and recommendation adopted*, No. 1:13-CV-2635-CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014).

The FCRA, recognizing that consumers are often best positioned to detect credit-reporting inaccuracies, empowers them to monitor their credit, § 1681g, and seek correction of inaccurate information by submitting a dispute, § 1681i.  The dispute process is crucial because "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice" and "can target its resources in a more efficient manner and conduct a more thorough investigation."  *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (7th Cir. 1994).

## II.   EXPERIAN'S PROCEDURES

### A.   Experian's Procedures Related to Chapter 7 Bankruptcy.

Experian obtains general public record information regarding consumer bankruptcies from its public records vendor, LexisNexis ("Lexis"). (SOF ¶ 12). Lexis reports to Experian when a consumer has petitioned for bankruptcy and when the bankruptcy court has entered a discharge order. (*Id.*).

Experian reports individual debts as discharged in a consumer's bankruptcy and with a $0 balance if the furnisher reports the debt to Experian as included in or discharged through bankruptcy by use of an industry-standard code known as a Consumer Information Indicator ("CII"). (*Id.* ¶ 22). Consumers can also notify

Experian that an account is discharged in bankruptcy by submitting a dispute. (*Id.* ¶ 23). When a consumer dispute states that an open, pre-bankruptcy debt was discharged in Chapter 7 bankruptcy, Experian will add a CII to cause the account to report as discharged. (*Id.*).

**B.    The *White-Hernandez* Injunction and Experian's Bankruptcy Scrub.**

Experian's procedures for reporting debts following consumers' Chapter 7 bankruptcy were exhaustively litigated in the *White-Hernandez* litigation, a nationwide class action pending in the Central District of California. The *White-Hernandez* class challenged Experian's reliance on data furnishers and consumers for reporting debts following consumers' Chapter 7 bankruptcy, alleging this exclusive reliance violated § 1681e(b) of the FCRA. (SOF ¶¶ 1-3). In 2008, after extensive labor by the parties, counsel, and the court itself, the court entered an agreed order resolving plaintiffs' claims for injunctive relief and requiring Experian to adopt additional procedures. (*Id.*).

The White Order requires Experian "to assume that certain categories of pre-bankruptcy consumer debts have been discharged . . . without either the affected creditors or Consumers reporting the debt to Defendants as having been discharged" and to update its reporting accordingly. (*Id.* ¶¶ 4-7). The White Order also requires that Experian exclude certain debts from this update, including those with a "Current

Status." (*Id.* ¶¶ 6). The White Order expressly preserved consumers' ability to dispute inaccuracies that occurred or remained despite its assumptions, and the court retained jurisdiction to resolve future disputes arising out of its terms. (*Id.* ¶¶ 9-10).

Experian implemented the White Order by developing its Chapter 7 bankruptcy scrub. When Lexis notifies Experian that a discharge order has been entered in a consumer's Chapter 7 bankruptcy, the scrub automatically evaluates the consumer's credit file and adds a CII code to qualifying debts to cause them to report as discharged in bankruptcy and with a $0 balance. (*Id.* ¶ 13). The scrub excludes debts that are in a current status at the time of a consumer's bankruptcy unless those debts are more than 90 days delinquent at the time the scrub executes. (*Id.* ¶ 14). Experian's 90-day threshold distinguishes consumers who have fallen behind on a debt but intend to catch up from those who have stopped paying the debt and are treating it as discharged. (*Id.* ¶ 17).

Experian goes beyond the requirements of the White Order by continuing to monitor affected credit files through a "look-back" scrub. (*Id.* ¶ 20). The look-back scrub runs bi-monthly and updates any pre-bankruptcy debt reporting as more than 90 days delinquent, regardless of its status at the time the bankruptcy was filed. (*Id.*). This catches any pre-bankruptcy accounts that were excluded from the initial scrub because they were current but which the consumer later stopped paying. (*Id.*). As the

*White-Hernandez* court was aware, consumers commonly choose to maintain debts through their Chapter 7 bankruptcy and often incur new, post-petition debt on pre-bankruptcy accounts that is not subject to discharge. (*Id.* ¶¶ 15-16). It is generally better for a consumer's creditworthiness to report timely payments on an account, and a delinquency of 30, 60, or 90 days is generally less harmful to creditworthiness than the derogatory status of discharged in bankruptcy. (*Id.* ¶¶ 18-19).

## III. EXPERIAN'S SCRUB OF PLAINTIFF'S MONEYLION ACCOUNT

In August 2019, Plaintiff took out a $500 secured loan with MoneyLion Inc. ("MoneyLion"). (SOF ¶ 25). Plaintiff does not recall why she took out the loan or what it was secured by, but MoneyLion offers a $1,000 "Credit Builder" loan in which a borrower is provided $500 and $500 is set aside as collateral. (*Id.* ¶¶ 26-27).

Plaintiff filed a Chapter 7 bankruptcy in September 2020. (*Id.* ¶¶ 28). The bankruptcy was discharged on January 13, 2020. (*Id.* ¶ 29). Experian's scrub ran on January 20, 2020 and updated several accounts in Plaintiff's credit file to report as discharged in bankruptcy. (*Id.* ¶ 30). The scrub excluded Plaintiff's MoneyLion account because it had a current status at the time of Plaintiff's bankruptcy petition and was not more than 90 days delinquent at the of the scrub. (*Id.* ¶ 31). Plaintiff obtained her May 9, 2020 Experian credit report ("Credit Report") at the prompting of her bankruptcy attorney. (*Id.* ¶ 39). The Credit Report showed that, as of that date,

MoneyLion was reporting the account as in collections:



(Ex. H, May 9 Credit Report).[1]

Experian's look-back scrub next ran on June 1, 2020 and updated the MoneyLion account based on the Collection status. (SOF ¶¶ 29). After the look-back scrub, the MoneyLion account reflected a discharged status:

(Ex. J, July 10 Credit Report).

---

[1] The May 9 report is a consumer "disclosure," § 1681g, which is distinct from a "consumer report." Disclosures are provided only to a consumer. *Id.* A "consumer report," § 1681a(d), is sent to third parties such as credit grantors. Experian uses the non-statutory term "Credit Report" to refer to Plaintiff's disclosure.

Plaintiff testified that she "was a little frustrated" because she was "under the assumption that this would not have been on my credit report after the discharge of my bankruptcy." (SOF ¶ 40). On previous occasions when Plaintiff discovered information on her credit report she believed to be inaccurate, she contacted the CRA to dispute the reporting. (*Id.* ¶ 41). In this instance, however, she did *not* contact Experian to dispute her MoneyLion account because her bankruptcy attorney told her not to. (*Id.* ¶ 42). Had she done so, Experian would have updated the account to report as discharged in bankruptcy. (*Id* ¶ 43).

## IV.   PLAINTIFF'S CLAIMS AND ALLEGED DAMAGES.

On June 9, 2020 Plaintiff filed this case, alleging a single count: that Experian violated § 1681e(b) by failing to have reasonable procedures to assure the maximum possible accuracy of her report. (Doc. 1 ¶ 39). Plaintiff alleges Experian's reporting caused her to be denied a credit card from Credit One and to receive unfavorable terms for credit cards obtained from Capital One and Premier. (*Id.* ¶¶ 34-35). Plaintiff also alleges that she suffered "emotional distress, humiliation, and mental anguish." (*Id.* ¶ 40). Plaintiff has not produced any evidence that she was denied credit or was granted credit on unfavorable terms because of Experian's reporting or any documentary evidence regarding her emotional distress. (SOF ¶¶ 44-47).

## LEGAL STANDARD

A court should grant summary judgment if there "is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant is entitled to judgment as a matter of law where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* The moving party is not required to disprove every element of the non-movant's case, but is instead "required to demonstrate only that plaintiff will be unable to meet his or her burden of proof on any essential element of his or her claims." *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 644 (S.D. Ala. 2007).

## ARGUMENT

### I. THERE IS NO BASIS TO ALLOW PLAINTIFF TO RELITIGATE THE WHITE SETTLEMENT ORDER.

#### A. *White-Hernandez* Held That Experian's Procedures Are Reasonable, and Plaintiff Cannot Show Otherwise.

Experian's reporting of Plaintiff's MoneyLion account arose out of the White Order, a federal injunction that binds Experian. Because the account was current when Plaintiff filed bankruptcy, the White Order required that Experian not immediately "scrub" the account to a status of discharged. The *White-Hernandez* court held that these procedures, informed by years of negotiation and lay and expert

9

discovery, constitute "reasonable procedures to assure the maximum possible accuracy" of Experian's reporting of debts following Chapter 7 bankruptcy and comply with § 1681e(b) as a matter of law. (Ex. B, White Order ¶ 5.4).

Nothing in the record suggests the *White-Hernandez* court was wrong. On the contrary, this case underscores why the White Order's assumptions make sense. By applying the White Order's procedures, Experian updated several of Plaintiff's accounts to report as discharged in bankruptcy without being asked to do so by Plaintiff or the furnisher. (SOF ¶ 30). Plaintiff's MoneyLion account was not updated because it was current when Plaintiff filed for bankruptcy. (*Id.* ¶ 31). This exclusion reflects the reality that consumers often seek to maintain pre-bankruptcy debts. (*Id.* ¶¶ 15-16); 11 U.S.C. § 524(f). Indeed, MoneyLion reported that Plaintiff made payments during her bankruptcy and after discharge. (*Id.* ¶¶ 32-33). What's more, Experian went beyond the White Order's requirements by developing a look-back scrub that updated Plaintiff's MoneyLion account once it became clear she had stopped making payments. (*Id.* ¶¶ 20, 36).

Because Plaintiff has failed to come forward with any evidence call into question *White-Hernandez* court's holding that the procedures it required comply with the FCRA, her claim should be summarily dismissed.

**B.    The White Order Precludes This Litigation.**

The White Order resulted from exhaustive, court-supervised discovery and negotiations between the three major CRAs and nationwide class counsel and was carefully devised to maximize the accuracy of post-bankruptcy credit reports while minimizing harm to consumers. It established a consumer-oriented framework that governs how Experian report debts following Chapter 7 bankruptcy. Recognizing that CRAs risked future litigation by binding themselves to procedures that, although consumer-friendly, would unavoidably result in credit-reporting inaccuracies, the *White-Hernandez* court precluded consumers from relitigating the reasonableness of the White Order's procedures—exactly what Plaintiff seeks to do here. The doctrine of collateral estoppel and supporting considerations regarding conflicting judgments, the promotion of class settlements, and fundamental fairness counsel strongly in favor of rejecting Plaintiff's claim.

Collateral estoppel "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (citation omitted). Federal courts no longer require identity or privity of parties and have adopted the doctrine of nonmutual preclusion. *See, e.g.*, *id.* at 651; 18A Charles A. Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 4464 (3d ed. 2004) (3d ed.) (observing that "nonmutual preclusion ha[s] continued to be available in federal cases after the Parklane decision" and that later decisions "ha[ve] not stemmed [its] regular use"). In the class context, this doctrine bars future members of a certified class, or those similarly situated to them, from relitigating an issue. *See, e.g., Riddick ex rel. Riddick v. Sch. Bd. of City of Norfolk*, 784 F.2d 521, 532 (4th Cir. 1986). This "encourage[s] settlements and serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled questions at the core of a class action." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 281 (3d Cir. 2014) (citation and quotation omitted); *see also Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990) (holding that "because the consent decree is continuing in nature, it binds people who were not direct parties to it").

Preclusion is particularly appropriate in the context of injunctive class settlements. For instance, in *LeClair v. Mass. Bay Transp. Auth.*, 300 F. Supp. 3d 318 (D. Mass. 2018), the district court held that a disabled transit rider's claims for equitable relief were precluded by an 11-year-old consent decree requiring improved access to transit facilities for disabled riders. The court determined: "[Plaintiff] is seeking to relitigate the same issues that have already been resolved by that proceeding, which he may not do." *Id.* at 324. The requested relief "would

undermine the finality of the settlement and create a substantial potential for inconsistent judgments," and the plaintiff had adequate recourse because the consent decree set forth a dispute-resolution procedure over which the approving court retained jurisdiction. *Id.* at 324-325.

*LeClair* is persuasive here. Plaintiff, like the class plaintiffs in *White-Hernandez*, challenges the reasonableness of Experian's procedures for reporting debts following consumers' Chapter 7 bankruptcies. Plaintiff would have been a member of the settlement class but for the passage of time. (Ex. B, White Order ¶¶ 2.13, 2.32) (defining class to include all consumers whose credit files had a Chapter 7 discharge prior to the Order's approval). The issues litigated in *White-Hernandez* included the CRAs' "post-discharge reporting of Consumer credit information relating to pre-bankruptcy debts," which is the central issue here. (*Id.* ¶ 2.23). And just as future litigants in *LeClair* were not left without a remedy, the White Order preserved consumers' ability to dispute inaccurate information, and the court retained broad jurisdiction "to resolve any future disputes arising out of the terms and conditions of the Settlement." (*Id.* ¶¶ 3.7, 9.5). Foreseeing that plaintiffs' attorneys might seek to capitalize on the White Order's binding effect, the court expressly precluded relitigation of the "reasonableness of Defendants' post-

discharge reporting of Consumer credit information relating to pre-bankruptcy debts[.]" (*Id.* ¶ 5.6).

Experian should not be punished binding itself to procedures that the *White-Hernandez* court and plaintiffs recognized as a sweeping benefit to consumers. (*Id.* ¶¶ 5.3, 5.4); (Ex. D, *White-Hernandez* Brief 18) (describing White Order as a "complete and total victory"). The CRAs' agreement was particularly remarkable because, as courts have persuasively held, private litigants cannot obtain injunctive relief under the FCRA. *E.g.*, *Washington v. CSC Credit Servs.*, 199 F.3d 263, 268 (5th Cir. 2000); *Campos v. ChoicePoint, Inc.*, 237 F.R.D. 478, 481 n.8 (N.D. Ga. 2006). The prospect that defendants can be held liable for actions directed by an agreed injunction would discourage voluntary resolution of future injunctive claims, undermining the "strong" public policy "favor[ing] the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). It would also encourage relitigation of the reasonableness of the White Order, an issue conclusively settled years ago,[2] and cut against basic notions of equity and fairness.

---

[2] The threat of increased litigation is not theoretical. CRAs have been sued dozens of times in recent months, primarily by Plaintiff's counsel, based on CRAs' adherence to the White Order. *See, e.g.*, *Campbell v. Experian Info. Sols., et al.*, 0:20-cv-02498-DSD-BRT (D. Minn. Dec. 8, 2020); *Ha v. Experian Info. Sols.*, 0:20-cv-2513-JRT-DTS (D. Minn. Dec. 9, 2020); *Njie v. Experian Info. Sols., et al.*, 1:20-cv-04735-JPB-LTW (N.D. Ga. Nov. 20, 2020); *Cochran v. Experian Info. Sols.*,

*See, e.g.*, *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 735 F. Supp. 753, 761 (M.D. Tenn. 1990), *aff'd*, 908 F.2d 972 (6th Cir. 1990), and *aff'd sub nom. Metro. Gov't of Nashville & Davidson Cty. v. Crocker*, 908 F.2d 973 (6th Cir. 1990) (finding defendant's imposition of sanctions against school district to be "unjust and outrageous" because "[f]undamental fairness dictates that Metro should not incur any penalty or sanction by virtue of the fact that [it complied with] a valid court order.") (citations omitted).

The *White-Hernandez* court did not leave Plaintiff without a remedy, and that is not Experian's position here. To the extent Plaintiff simply wanted the MoneyLion account updated faster, the White Order preserved her right to contact Experian and dispute the account. If that step failed to remedy the issue, she would be free to file a claim under § 1681i. If Plaintiff's position is that the White Order was wrongly decided, unreasonable, or that circumstances have changed, the court retained jurisdiction so that Plaintiff was free to raise that issue. Plaintiff is precluded only from collaterally attacking the Order by seeking to impose liability on Experian for complying with its terms.

---

1:20-cv-7233 (N.D. Ill. Dec. 7, 2020); *Wheeler v. Experian Info. Sols., et al.*, 2:20-cv-11710-RGK (C.D. Cal. Dec. 29, 2020).

## II.   PLAINTIFF CANNOT SHOW THAT EXPERIAN DID NOT FOLLOW REASONABLE PROCEDURES.

To prevail on her claim, Plaintiff "must show that information in the report is inaccurate and that the defendant's policies and procedures were unreasonable." *Hicks v. Trans Union LLC*, No. 1:18-CV-1871-TCB-CCB, 2019 WL 4804110, at *5 (N.D. Ga. Aug. 6, 2019), *report and recommendation adopted*, No. 1:18-CV-1871-TCB, 2019 WL 4752272 (N.D. Ga. Aug. 20, 2019) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)). Summary judgment is appropriate on a § 1681e(b) claim "when the reasonableness or unreasonableness of the procedures is beyond question." *Myers v. Experian Info. Sols.*, No. CV-08-S-1865-NW, 2009 WL 10692768, at *7 (N.D. Ala. Dec. 11, 2009) (citing *Crabill v. Trans Union*, 259 F.3d 663 (7th Cir. 1994)); *see also Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007) (granting summary judgment on §1681e(b) claim where Plaintiff failed to carry her "burden to establish that the procedures followed by Trans Union were not reasonable"); *cf. Hunsinger v. Bank of Am. Corp.*, No. 1:12-CV-1452-CC-RGV, 2012 WL 13130229, at *6 (N.D. Ga. Oct. 16, 2012), *report and recommendation adopted*, No. 1:12-CV-01452-CC, 2013 WL 12380872 (N.D. Ga. Apr. 11, 2013) (granting summary judgment on FCRA claim against furnisher because Plaintiff failed to produce evidence showing its investigation was unreasonable).

### A.    There Is No Evidence That Experian's Reliance On MoneyLion Was Unreasonable.

As explained, compliance with § 1681e(b) largely consists of "rel[ying] upon a source that [the CRA] reasonably believes is reputable and reliable." *Aslani*, 2014 WL 12861199, at *4. Where there is no evidence to show that the CRA's initial reliance on the data furnisher was unreasonable, a § 1681e(b) claim fails as a matter of law. *See*, *e.g.*, *Swoager v. Credit Bureau of Greater St. Petersburg, Fla.*, 608 F. Supp. 972, 975 (M.D. Fla. 1985) (granting summary judgment on § 1681 e(b) claim where "plaintiff has simply presented no evidence indicating that the defendant's initial reliance on the information provided by FMCC was not reasonable"); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 972 (7th Cir. 2004) (finding it reasonable as a matter of law for CRAs to report information from financial institutions "unless there was prior notice from the consumer that the information might be inaccurate").

Here there is no evidence that Experian's reliance on MoneyLion was unreasonable. Rather, the record shows that, by relying on MoneyLion, Experian accurately reported the terms of the debt, the fact that Plaintiff made payments on the loan through February 2020, and the fact that MoneyLion turned the loan over to collections. The mere fact that MoneyLion did not report that the debt was discharged does not render that initial reliance unreasonable, particularly when Courts have repeatedly held that determining whether a particular debt is discharged

is beyond what the FCRA asks of Experian. *See*, *e.g.*, *Losch v. Experian Info. Sols.*, 2:18-CV-809, 2020 WL 728606, *3 (M.D. Fla. Feb. 12, 2020) (holding that, even in the context of a consumer dispute, the FCRA "does not require a credit-reporting agency's investigation to include examining court orders and other documents to determine their legal effect"); *Hupfauer v. Citibank, N.A.*, No. 16-CV-475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016) (holding that the discharge status of debts is "precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer"); *Cristobal v. Equifax, Inc.*, No. 16-CV-06329-JST, 2017 WL 1489274, at *3 n. 4 (N.D. Cal. Apr. 26, 2017) (holding that the FCRA "does not require the CRAs to act as a tribunal or scour a bankruptcy file and make judgments about which debts are included") (citations and quotations omitted).[3]

### B. Experian Did Not Have Notice That Plaintiff's MoneyLion Account Was Discharged in Bankruptcy.

The FCRA is not a strict liability statute, and it does not impose liability under § 1681e(b) for inaccuracies "absent prior notice from the consumer that the information may be unreliable," *Henson v. CSC Credit Servs.*, 29 F.3d 280, 285 (7th Cir. 1994), or "notice of prevalent unreliable information from a reporting lender."

---

[3] It is also questionable whether the MoneyLion account was, in fact, discharged, as a consumer debt of $500 obtained within 90 days of filing a bankruptcy is often not dischargeable. *See* 11 U.S.C. § 523(c)(i)(I).

*Sarver*, 390 F.3d at 972 *accord Murphy v. Midland Credit Mgmt.,* 456 F. Supp. 2d 1082 (E.D. Mo. 2006). The notice requirement is appropriate because "once a claimed inaccuracy is pinpointed, a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information . . . [and] the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly." *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3rd Cir. 1997).

Experian received no notice from Plaintiff that its reporting was inaccurate. Instead, acting on her lawyer's advice, she deliberately chose *not* to notify Experian. This is inconsistent with the spirit and structure of the FCRA. Congress empowered consumers to monitor their credit and seek correction of inaccuracies because it recognized that they are far better positioned than CRAs—third parties to both credit transactions and consumer bankruptcies—to detect inaccuracies. S-Rep. 103-209 at 5-6, 18 (*available at* 1993 WL 516162). Similarly, the White Order ensured that consumers could promptly and effectively seek correction of unavoidable post-bankruptcy inaccuracies through the dispute process. (Ex. B, White Order ¶¶ 3.4(b); 3.7). Plaintiff's demand that Experian perfectly guess which of her debts were discharged in bankruptcy goes far beyond what § 1681e(b) requires.

**C.    Experian's Procedures Exceed the Requirements of the White Order.**

Experian's scrub represents a reasonable and consumer-friendly approach to credit reporting following a Chapter 7 bankruptcy discharge when Experian does not know the discharge status of a particular debt. Consistent with the White Order, Experian's scrub excludes accounts that had a current status at the time of a consumer's bankruptcy unless those debts have become more than 90 days delinquent when the scrub executes. (SOF ¶ 14, 17). This reflects the reality that consumers commonly maintain and continue paying debts through their bankruptcy and often incur new, post-petition debt on pre-bankruptcy accounts that is not subject to discharge. (*Id.* ¶¶ 15-16). It also reflects that consumers benefit from having open accounts with positive payment history on their credit reports and that "discharged in bankruptcy" is generally more harmful to consumers than 30, 60, and 90-day delinquencies. (*Id.* ¶¶ 18-19).

And Experian goes beyond the requirements of the White Order by continuing to monitor affected credit files through its look-back scrub. (*Id.* ¶ 20). Thus, once it became clear that Plaintiff no longer intended to make payments on her MoneyLion account, Experian updated its reporting as Plaintiff desired without her having to contact Experian. (*Id.* ¶ 36). Experian's belt-and-suspenders approach allows consumers to benefit from making continued payments on debts that may not have

been fully discharged in bankruptcy while assuring that debts report as discharged if it becomes clear the consumer is treating them as such.

## III. PLAINTIFF CANNOT SHOW THAT EXPERIAN CAUSED HER ACTUAL DAMAGES.

Plaintiff also has produced no evidence showing that she was damaged by Experian's reporting of the MoneyLion account during the brief time period before the account was scrubbed to a status of "discharged." This failure "'mandates summary judgment.'" *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1262–63 (S.D. Fla. 2009) (quoting *Nagle v. Experian Info. Sols.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).

Plaintiff alleges that Experian's reporting caused her to be denied credit but provides no support for this claim beyond her pleaded allegations. She has produced no credit denial letters linking adverse credit action to information provided by Experian. (SOF ¶ 44) When asked at deposition, Plaintiff had no information connecting Experian's reporting to a credit denial. (*Id.*)[4] (Plaintiff did, however, recall successfully applying for two credit cards after her bankruptcy. (*Id.* ¶ 38)). The lack of evidence is telling given that creditors are required to provide written

---

[4] Plaintiff's counsel asserted that her client is not qualified to testify to whether Experian's reporting led to credit denials because this conclusion requires expert testimony. (Ex. G, Benjamin Dep. Tr. 49:20-50:9.) Setting aside whether the claim makes sense, Plaintiff produced no expert and can cite to no expert testimony.

notice to a consumer denied credit describing the reasons for the denial and identifying the CRA that provided information causing the denial. 15 U.S.C. § 1681m(a); 12 C.F.R. § 1002.9.

Plaintiff claims her damages "consist primarily of emotional distress." (Ex. F, Plf. ROG. No. 12). Emotional distress can be recoverable under the FCRA, but there is no evidence to support recovery here. A plaintiff's self-serving testimony is not enough to establish emotional distress damages; she "must first show proof of an actual injury, such as evidence of the injured party's conduct and observations of others, for damages to be awarded for mental or emotional distress under the FCRA." *Taylor v. Corelogic Saferent, LLC*, No. 1:13-CV-03435-CAP-JFK, 2014 WL 11930592, at *7 (N.D. Ga. Oct. 23, 2014) (quoting *Jordan v. Trans Union*, LLC, No. 1:05-cv-0305, 2006 WL 1663324 at * 6 (N.D. Ga. June 16, 2006) and collecting cases); *Norris v. Ford Motor Credit Co.*, 198 F. Supp. 2d 1070, 1073 (D. Minn. 2002) (finding affidavit insufficient to support claims of emotional distress); *Sarver*, 390 F.3d at 971 ("We have maintained a strict standard for a finding of emotional damage because they are so easy to manufacture.") (citation omitted).

Plaintiff has produced no evidence of emotional distress beyond her own testimony. She has no records or documents relating to such distress. (SOF ¶ 45) She never experienced physical symptoms, never sought medical attention, and never

22

discussed her distress with anyone other than her attorney. (*Id.* ¶ 46). She did not feel any embarrassment or humiliation. (*Id.* ¶ 46). At most, Plaintiff testified that Experian's reporting a caused her some level of anger which she believed created a week of difficult sleep with "a few of those nights" having no sleep at all. (*Id.* ¶ 48). Plaintiff offers no corroborating evidence and no medical testimony linking her sleeping difficulty to Experian's reporting.

Finally, any alleged distress was not caused by Experian. Plaintiff would have suffered no distress at all had her bankruptcy counsel, when he advised her to obtain her credit report, explained that she could quickly and easily correct any inaccuracies by contacting Experian to submit a dispute. This is exactly the set of circumstances in which courts grant summary judgment. *See Taylor*, 2014 WL 11930592 at *7; *Rambarran*, 609 F. Supp 2d. at 1267.

## IV.    PLAINTIFF CANNOT SHOW THAT EXPERIAN PREPARED AN INACCURATE CONSUMER REPORT.

A plaintiff must present "evidence showing that a consumer report was furnished to a third party" as a "prerequisite to a cause of action under § 1681e(b)." *Johnson v. Equifax, Inc*., 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007); *see also Collins v. Experian Info. Sols.*, 775 F.3d 1330, 1335 (11th Cir.) (distinguishing § 1681e(b) from § 1681i(a) on the basis of the requirement of a consumer report disclosed to a third party). Plaintiff has come forward with no such evidence. The May 9 Credit

Report on which she bases her allegations is a disclosure sent solely to Plaintiff. Such disclosures are not "consumer reports" under the FCRA and do not trigger Section 1681e(b) liability. *Id*.; § 1681a(d); § 1681g.

Plaintiff has offered no evidence that Experian provided an inaccurate consumer report to a third party. Plaintiff's credit report shows that potential creditors made three "hard inquiries" (typically associated with credit applications) between the time of her bankruptcy discharge and June 1, 2020, when Experian updated her MoneyLion account. (Ex. J, July 10 Credit Report 4). Experian does not maintain records of the actual reports, and not all inquiries results in a full report being provided to the potential creditor. (SOF ¶ 50). Plaintiff has produced no denial letters or other evidence that Experian provided inaccurate information in response to these inquiries. Her mere allegation that this occurred does not create a triable issue. *See Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 826 (11th Cir. 2009).

## V.   PLAINTIFF CANNOT SHOW A WILLFUL VIOLATION

To establish willfulness under the FCRA, § 1681n, a consumer must show a CRA knowingly or recklessly violated the statute. *Safeco*, 551 U.S. at 57-58. Reckless conduct "entail[s] an unjustifiably high risk of harm that is known or so obvious that it should be known." *Safeco*, 551 U.S. at 68. "[A} willful violation

requires that a party's reading of the FCRA is—at minimum—objectively unreasonable." *Id.* at 69.

As described, Experian's reporting was directed by a binding court order that held as a matter of law that the procedures followed here comply with § 1681e(b). (Ex. B, White Order ¶ 5.4). Those procedures were developed after extensive litigation and carefully designed to increase the accuracy of post-bankruptcy credit reporting while minimizing harm to consumers. The White Order's interpretation of the FCRA is not "objectively unreasonable," and Experian's adherence to its terms by not automatically updating current-status accounts to the derogatory status of discharged in bankruptcy does not "entail an unjustifiably high risk of harm[.]" *Safeco*, 551 U.S. *at* 68. In fact, Experian went beyond the requirements of the White Order by continuing to monitor Plaintiff's account and updating its reporting to discharged in bankruptcy without being asked to do so.

## CONCLUSION

For the foregoing reasons, the Court should grant Experian's Motion for Summary Judgment.

Dated: February 23, 2021

Respectfully submitted,

*/s/ Eric A. Nicholson*
Eric A. Nicholson (*pro hac vice*)
Michigan Bar No. 83825
**Jones Day**
150 West Jefferson, Suite 2100
Tel:  (313) 230-7927
eanicholson@jonesday.com

Andrew M. Ellis
Georgia Bar No. 536041
**Jones Day**
1420 Peachtree St NE, Suite 800
Atlanta, GA 30309-3053
Tel:  (404) 581-8721
aellis@jonesday.com

*Counsel for Defendant*
*Experian Information Solutions,*
*Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated: February 23, 2021    Respectfully submitted,

          */s/ Eric A. Nicholson*
          Eric A. Nicholson (*pro hac vice*)
          Michigan Bar No. 83825
          **Jones Day**
          150 West Jefferson, Suite 2100
          Tel:  (313) 230-7927
          eanicholson@jonesday.com

          Andrew M. Ellis
          Georgia Bar No. 536041
          **Jones Day**
          1420 Peachtree St NE, Suite 800
          Atlanta, GA 30309-3053
          Tel:  (404) 581-8721
          aellis@jonesday.com

          *Counsel for Defendant*
          *Experian Information Solutions,*
       *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 23, 2021, I served on all parties Experian's

Brief in Support of Motion for Summary Judgment by filing on CM/ECF.


*/s/ Eric A. Nicholson*
_____

*Counsel for Defendant Experian*
*Information Solutions, Inc.*