## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHARLYNDA BENJAMIN,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 1:20-cv-02466-CC-RDC |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS' OBJECTIONS TO MAGISTRATE JUDGE'S FINAL REPORT & RECOMMENDATION

Plaintiff alleges that Defendant Experian Information Solutions, Inc. ("Experian") violated § 1681e(b) of the Fair Credit Reporting Act because it did not immediately update a secured debt she incurred with MoneyLion on the eve of her bankruptcy as discharged in that bankruptcy. MoneyLion did not inform Experian that the debt was discharged and neither did Plaintiff, whose attorney advised her not to seek correction of purportedly distressing inaccuracy. Nevertheless, Experian corrected the alleged inaccuracy on its own initiative three weeks after Plaintiff viewed her credit report and well before she commenced this litigation.

It is well-established that the FCRA does not impose strict liability on consumer reporting agencies for credit-reporting inaccuracies. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991). The Eleventh Circuit recently clarified the standard for liability under § 1681e(b) of the FCRA, establishing that CRAs cannot be held liable absent notice that an item of information is inaccurate. Although Experian never received such notice here and, in fact, corrected the alleged inaccuracy on its own initiative, Magistrate Judge Cannon concluded in her Final Report and Recommendation, ECF No. 72 ("R&R"), that there was a factual question as to whether Experian negligently violated § 1681e(b) of the FCRA.

Judge Cannon errs in at least four key respects. First, she misconstrues *Losch* and improperly concludes that Experian had notice of the alleged inaccuracy. Second, she finds a fact question as to the reasonableness of Experian's procedures when those procedures go beyond what § 1681e(b) has ever previously been held to require. Third, she ignores Eleventh Circuit precedent requiring a causal connection between an inaccurate consumer report and asserted damages. Finally, she erroneously concludes that Plaintiff has presented evidence of emotional distress sufficient to create a genuine factual issue regarding actual damages. This Court

should reject the Magistrate Judge's R&R and grant summary judgment for Experian.

## I.   STANDARD OF REVIEW

The District Court must review de novo any part of a magistrate judge's report and recommendation subject to a proper objection. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(A). This requires that the district judge "'give fresh consideration to those issues to which specific objection has been made by a party.'" *Jeffrey S. ex rel. Ernest S. v. State Board of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. No. 94-1609). The Court must review all other portions of the report and recommendation for clear error. *Id.*

## II.   ARGUMENT

### A.   Experian did not have notice that Plaintiff's MoneyLion debt was discharged in bankruptcy.

Following the close of briefing on the parties' motions for summary judgment, the Eleventh Circuit issued a decision in *Losch v. Experian Info. Sols., Inc.*, 995 F.3d 937, 945 (11th Cir. 2021). *Losch* adopts the holdings and reasoning of out-of-circuit precedent establishing that a CRA must have notice of a credit-reporting inaccuracy in order to be held liable under § 1681e(b). *Id.* (citing *Sarver v. Experian Info. Sols.*, 390 F.3d 969 (7th Cir. 2004); *Henson v. CSC Credit Servs.*, 29 F.3d 280 (7th Cir. 1994); and *Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997)). Judge

Cannon, applying *Losch*, concludes that, because Experian was aware that a discharge order was entered in Plaintiff's Chapter 7 bankruptcy, it also had notice that each of Plaintiff's pre-bankruptcy debts "were individually discharged," which she concludes is enough to sustain Plaintiff's § 1681e(b) claim. R&R at 34.

This misconstrues the nature of the "notice" contemplated by *Losch* and the out-of-circuit precedent it incorporates. The notice required to establish a § 1681e(b) claim is of a kind that enables a CRA to "'pinpoint'" a potential inaccuracy. *Losch*, 995 F.3d at 945 (quoting *Cushman*, 115 F.3d at 225).   *Sarver*, which *Losch* incorporated, demonstrates the error in Judge Cannon's recommendation. In that case, the consumer claimed that, even without a dispute, Experian should have noticed that an account reported as included in bankruptcy was inaccurate by virtue of the fact other accounts were not reporting as included in bankruptcy. The Seventh Circuit explained the problem with this argument:

> One can easily see how, even with safeguards in place, mistakes can happen. But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable. In his attempt to show that Experian's procedures are unreasonable, Sarver argues that someone should have noticed that only the Cross Country accounts were shown to have been involved in bankruptcy. That anomaly should have alerted Experian, Sarver says, to the fact that the report was inaccurate. What Sarver is asking, then, is that each computer-generated report be examined for anomalous information and, if it is found, an investigation be launched. In the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we cannot find that

such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily.

*Sarver*, 390 F.3d at 972.

Here, similar to *Sarver*, Plaintiff claims that it should have noticed that Plaintiff's MoneyLion debt was not reporting correctly simply by virtue of the fact that Experian had notice of Plaintiff's bankruptcy discharge, and Judge Cannon agrees. But, no court has ever read § 1681e(b) to extend so far, and *Losch*'s adoption of *Sarver* and related cases shows that the Eleventh Circuit does not either.  Rather, the requisite notice in *Losch* was provided through a consumer's dispute: "Once Losch informed Experian of a factual inaccuracy in his reports, Experian needed only to investigate that single, alleged error." *Losch*, 995 F.3d at 945. *Henson* and *Cushman* also contemplate notice through the consumer dispute process. *See Henson*, 29 F.3d at 286-7 (requiring "prior notice from the consumer"); *Cushman*, 115 F.3d at 225 (describing a CRA's heightened investigatory obligations under § 1681i following a consumer's dispute). In keeping with these decisions, *Losch* squarely held that Experian was entitled to summary judgment "[t]o the extent that any of Losch's claims under § 1681e(b) alleges that Experian acted unreasonably in

preparing any credit reports before he informed it of the relevant inaccuracy." *Losch*, 995 F.3d at 945 n 6.[1] Judge Cannon ignores this holding completely.

*Losch* does not specify what forms of notice other than a consumer dispute might be sufficient to establish liability under § 1681e(b), but the Eleventh Circuit's reasoning, and the reasoning of out-of-circuit cases it adopts, do not support a conclusion that something as generalized as a Chapter 7 bankruptcy discharge fits the bill. As recited by Plaintiff's discharge order, her discharge eliminated personal liability for "most, but not all" debts that existed prior to the bankruptcy petition. ECF 49-14, Discharge Order. Debts subject to an enumerated discharge exception, 11 U.S.C. § 523, are not discharged, and a debtor may also choose to enter into a

---

[1] Consistent with *Losch*, Congress has also indicated that § 1681e(b) does not require the sort of inquiry Judge Cannon supposes, explaining that the FCRA's dispute mechanisms are key to assuring accuracy:

> The Committee is aware that the consumer reporting system handles almost two billion pieces of data per month and will never be perfectly accurate. Mistakes will occur, and not all of them can be prevented. Section [1681i] is the heart of the Committee's efforts to ensure the ultimate accuracy of consumer reports by placing important requirements upon consumer reporting agencies after inaccuracies have been detected. Therefore, section [1681i] is designed to ensure that consumers are able to address problems and correct errors in a timely fashion.

S. Rep. 104-185.

reaffirmation or lease-assumption agreement with the lender. *See* 11 U.S.C. § 524(c); 11 U.S.C. § 365(d). The Bankruptcy Code also expressly permits debtors to continue making payments on a debt following discharge, 11 U.S.C. § 524(f), and debtors may incur new, post-petition debt on pre-bankruptcy accounts that is not subject to discharge.

The form discharge order entered in Plaintiff's bankruptcy does not specify which individual debts were or were not discharged in bankruptcy. *See* Discharge Order. The list of exclusions set forth in the Bankruptcy Code and the case Judge Cannon cites to support her conclusion that there is a Chapter 7 "default rule" also do not specify which of a consumer's individual debts are subject to discharge. R&R at 34 (citing *Medley v. Dish Network, LLC*, 958 F.3d 1063, 1067 (11th Cir. 2020)). These authorities do not involve credit reporting and do not address reaffirmation agreements, lease-assumption agreements, or the practical reality that consumers may choose to maintain debts after their bankruptcy At most, they establish that the discharge order's statement that "most, but not all" pre-bankruptcy debts are discharged is correct. Simply put, a bankruptcy discharge does not pinpoint an inaccuracy in a consumer's credit file in the manner required by *Losch*.

Judge Cannon summarily distinguishes cases addressing CRAs' obligations related to the debts of consumers in Chapter 13 bankruptcy. But "[i]t is undisputed

that a Chapter 13 discharge under § 1328(a) is broader than a discharge in Chapter 7." *In re Rose*, 37 B.R. 876, 879 (Bankr. N.D. Ga. 1984) (collecting cases). *See also In re Ruth*, No. 10-50184, 2013 WL 139265, at \*7 (Bankr. E.D. Tex. Jan. 10, 2013) (describing Chapter 13 as providing a "super discharge"). Courts have generally rejected the notion that CRAs have an obligation to determine what debts are discharged in a consumer's Chapter 13 bankruptcy, and Judge Cannon does not explain why, given the narrower nature of a Chapter 7 discharge, the rule would be different, especially when Plaintiff did not dispute the account at issue. *See*, *e.g. Hupfauer v. Citibank, N.A.*, No. 16 C 475, 2016 WL 4506798, at \*7 (N.D. Ill. Aug. 19, 2016) ("[R]equiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party[.]"); *Crump v. Carrington Mortg. Servs., LLC*, No. 18 C 2302, 2019 WL 118490, at \*6 (N.D. Ill. Jan. 7, 2019) (dismissing pre-dispute liability and stating that classifying debts as discharged or not in a consumer's Chapter 13 bankruptcy is "a procedure that § 1681e(b) does not demand.").

Further, the significance of the notice requirement in *Losch* is that it enables a CRA to focus investigatory efforts on a discrete universe of potentially inaccurate information. In turn, the central question after a CRA receives notice of an

inaccuracy is "whether the credit reporting agency could have discovered an error in a particular report through a reasonable [re]investigation." *Cahlin*, 936 F.2d at 1160 (citing 15 U.S.C. § 1681i). The generalized nature of Chapter 7 proceedings and discharge orders makes it difficult for a CRA like Experian, a third party to both the bankruptcy and the underlying debt, to determine with perfect accuracy which debts are subject to a bankruptcy discharge and which are not. Unless the FCRA requires that CRAs automatically update all pre-bankruptcy debts to report as discharged—a proposition Judge Cannon implicitly rejects through denial of Plaintiff's motion for summary judgment—it is unclear what Experian would do with the notice supposedly provided by Plaintiff's bankruptcy discharge. The discharge order would offer little guidance, and review of Plaintiff's bankruptcy petition would show that she omitted the MoneyLion account, which would tend to suggest that the debt was *not* discharged. *See In re Baitcher*, 781 F.2d 1529, 1531 (11th Cir. 1986) (holding that debtor could obtain discharge of unscheduled debt in no-asset bankruptcy only if she could "show absence of fraud or intentional design" in failure to schedule).

### B.   Experian's procedures are reasonable.

Judge Cannon also concludes that there is a fact question with respect to the reasonableness of Experian's procedures because a jury could determine that

"Experian could have created marginally more accurate procedures at little-to-no cost and to the benefit of consumers like Plaintiff." R&R at 38.

This conclusion is based largely on an update Experian made to its bankruptcy scrub in early 2021 in which it changed the delinquency threshold for updating accounts through its scrub from 91 days to 30 days. Evidence of the change is not appropriately considered at summary judgment because it would be inadmissible at trial as a subsequent remedial measure under Federal Rule of Evidence 407. This rule provides that when "measures are taken that would have made an earlier injury or harm less likely to occur," evidence of those measures are not admissible to prove negligence or culpable conduct. Fed. R. Evid. 407. Judge Cannon concludes that, had Experian applied its updated procedures to Plaintiff's credit file, her May 2020 credit report would not have been inaccurate and "inaccurate information may not have been sent to third parties." R&R at 37. She nevertheless relies on this to find a factual issue as to whether Experian negligently violated the FCRA. *Id.* at 37-38. But this evidence is firmly within the ambit of Rule 407 and is not subject to the exception for the feasibility of remedial measures because feasibility is not in dispute.

The procedures applied by Experian to Plaintiff's credit file should be considered on their own terms. In this case, Experian excluded Plaintiff's

MoneyLion debt from its initial bankruptcy scrub in accordance with the White Order. The White Order was entered after in-depth discovery and input from consumer advocates and represents the only instance in which CRAs have been required to make assumptions about the discharge status of individual debts. Experian nevertheless continued to monitor Plaintiff's credit file and, without being asked to do so by Plaintiff or her creditor, updated the debt to report as discharged after it became clear that she was treating it as such. It would have updated its reporting sooner had Plaintiff disputed the alleged inaccuracy. ECF No. 49-4, Rogers Decl. at ¶¶ 23-24. This is the system functioning as it should.

Experian set the scrub threshold at 90 days because, first, this distinguishes debts a consumer seeks to maintain through bankruptcy from those a consumer has chosen to discharge and, second, a 30-, 60-, or 90-day delinquency is less harmful to a consumer's credit than an account status of discharged in bankruptcy.[2] ECF No.

---

[2] Additionally, it is well-known in the credit industry that debts less than 90 days are only "delinquent" and have minimal impact on a consumer's credit score, whereas debts that are discharged or more than 90 days delinquent are "major derogatory" debts that can significantly impact a consumer's credit score. *See*, *e.g.*, Gerri Detweiler, "Late Payment Secrets Revealed: How to Get a 700 Credit Score with Late Payments," Credit.com, March 11, 2021 (*available at* https://www.credit.com/debt/late-payment-forgiveness-secrets-revealed/) ("A payment that's 30 or 60 days late won't have as serious an effect on your credit score as a payment that's 90 days past due. But the decrease can be as much as 180 points for just a single 90-day late payment.").

49-4. Rogers Decl. ¶¶ 16-19. Judge Cannon refuses to credit Experian's rationale for the 90-day scrub threshold and concludes that a lower threshold would benefit consumers like Plaintiff. R&R at 37-38. But Plaintiff offers nothing aside from Experian's subsequent change to rebut Experian's evidence on this point or to support a conclusion that consumers would in fact benefit from a lower threshold. The failure to produce such evidence is particularly striking given Plaintiff's demand that Experian adopt procedures to automatically update *all* pre-bankruptcy debts to report as discharged in bankruptcy even though this would invariably result in Experian inaccurately authoring damaging information about a consumer. This would depart too far from Experian's statutory role as a CRA, which is to assemble and evaluate consumer credit information, not create it. *See* 15 U.S.C. § 1681a(f).

Finally, the Magistrate Judge errs in concluding that Plaintiff's decision not to dispute Experian's reporting "is not relevant to her claim under Section 1681e(b)" because "[t]he FCRA creates a separate cause of action if a CRA fails to conduct a reasonable investigation of information if a consumer disputes it." R&R 72 at 33. But as discussed above, *Losch* found a potential § 1681e(b) violation only with regard to Experian's post-dispute conduct and counsels that a CRA's procedures for handling consumer disputes are relevant to claims under § 1681e(b). Experian's policy when a consumer informs it that a pre-bankruptcy debt has been discharged

is, in most cases, to take the consumer's word and immediately update the debt to report as discharged in bankruptcy. That Plaintiff, acting on the advice of her bankruptcy counsel, chose not to alert Experian to its alleged error does not render Experian's dispute procedures irrelevant. It is, of course, true, that had Experian had *actual notice* that the Money Lion account was reporting inaccurately or *actual notice* that MoneyLion was an unreliable source, a consumer would have a § 1681e(b) claim even without a dispute, but there is no evidence in the record to support that theory of liability here.

### C.   Plaintiff has no evidence linking actual damages to Experian's preparation of an inaccurate consumer report.

Section 1681e(b) requires that a CRA follow reasonable procedures "[w]henever a consumer reporting agency prepares a consumer report." 15 U.S.C. § 1681e(b). Consistent with the statutory language, Eleventh Circuit precedent is clear that a plaintiff seeking to establish a § 1681e(b) violation must show not only that the CRA prepared an inaccurate consumer report but also that "the inaccurate [consumer] report caused him to suffer damages." *Erickson v. First Advantage Background Servs*., 981 F.3d 1246, 1251 (11th Cir. 2020). A plaintiff's "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment." *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002). The same is true for other consumer-focused statutes. *See, e.g., McLean v. GMAC*

*Mortg. Corp.,* 398 F. App'x 467, 471 (11th Cir. 2010) (requiring "specific evidence to establish a causal link between the financing institution's violation and [plaintiffs'] injuries" to establish a violation of the Real Estate Settlement Procedures Act); *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1028 (11th Cir. 2001) (requiring plaintiff to present "evidence to establish a causal link between the financing institution's noncompliance and his damages" to establish violation of Truth in Lending Act).

Judge Cannon errs in her analysis on this front in two key respects. As an initial matter, she finds that Plaintiff has carried her burden to produce evidence that inaccurate information about her MoneyLion debt was provided to third parties based on two "hard inquiries" on Plaintiff's credit report dated February 5, 2020, and January 31, 2020. R&R at 24-25. But as the record establishes, the information produced in response to subscriber inquiries depends entirely on what information is requested by the subscriber. ECF No. 49-11, C. Rogers Dep. 69:14-71:19. Subscribers may request information about individual accounts, but they often request information in a summary form such as a credit score. *Id.*; ECF No. 53-4, Rogers Decl. II at ¶ 17. Experian processes a vast number of inquiries regarding consumers and does not store the specific information provided in response or the specifics of the subscriber's request. ECF No. 49-4; Rogers Decl. at ¶ 50. The subscribers themselves should have that information, but Plaintiff made no effort

during discovery to determine what information those subscribers reviewed, and she offers no admissible evidence to show that any actual damage was caused by whatever information was provided in response to these inquiries. Simply put, Plaintiff did not satisfy her burden on this point. *See Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 645 (S.D. Ala. 2007) (holding that "evidence showing that a consumer report was furnished to a third party" is a "prerequisite to a cause of action under § 1681e(b)").

Second, the only evidence Plaintiff provides of actual damages is testimony that she experienced stress, anger, and some loss of sleep in response to her review of an Experian credit report dated May 9, 2020. The credit report reviewed by Plaintiff is a "disclosure" within the meaning of the FCRA and is provided only to the consumer. 15 U.S.C. § 1681g. This provision allows consumers to request their credit report and requires that Experian provide them with "all information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The purpose of this provision is to enable consumers to monitor their credit in order to help "ensur[e] an accurate credit reporting system." S. Rep. 103-209, at 5 (committee report on 1996 amendments to the FCRA) (available at 1993 WL 516162). Whereas actual damages caused by a CRA's preparation of an inaccurate consumer report can trigger FCRA liability under § 1681e(b), the same is not true of an inaccurate

consumer disclosure, which is governed by a different provision of the FCRA. § 1681g. Indeed, it would make little sense for Congress to require that a CRA provide a consumer with the full contents of her credit file under § 1681g so she can review it for accuracy and then permit the consumer to collect damages under a different subsection of the FCRA for distress allegedly experienced as a result of that review.

Plaintiff's wholesale failure to come forward with evidence linking her alleged emotional distress to Experian's preparation of an inaccurate consumer report is fatal, and Judge Cannon's conclusion to the contrary is inconsistent with the FCRA's statutory language and Eleventh Circuit precedent. In *Collins v. Experian Info. Sols.*, the court delineated the different showings required by the reasonable procedures requirement at issue here, § 1681e(b), and the FCRA's reasonable reinvestigation requirement, § 1681i. 775 F.3d 1330, 1335 (11th Cir. 2015) *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015). The Eleventh Circuit observed that § 1681e(b) relates to procedures followed when a CRA prepares a "consumer report," whereas § 1681i requires reinvestigation of potentially inaccurate information in a consumer's "file." *Collins*, 775 F.3d at 1334-35. Whereas a consumer report is defined as a communication to a third party, "'the term 'file', when used in connection with information on any consumer, means all of the information on that consumer *recorded and retained* by

a consumer reporting agency regardless of how the information is stored.'" *Id.* (quoting 15 U.S.C. § 1681a(g)) (emphasis added by the court). Congress's decision to "give different statutory definitions to the terms 'consumer report' and 'file,' and use[ ] the different terms in different subsections" compelled the court's conclusion that, while a § 1681e(b) claim must be linked to a third-party disclosure to permit recovery, a § 1681i claim need not be. *Id.* at 1335. Judge Cannon collapses this distinction. *See* R&R at 26 (concluding that "Experian's credit file for Plaintiff was inaccurate" as to her MoneyLion account). Plaintiff has the burden of showing that Experian's alleged violation of 15 U.S.C. § 1681e(b)—that is, the failure to follow reasonable procedures when preparing a consumer report—caused some harm. She has failed to meet this burden.

### D.     Plaintiff fails to present sufficient evidence of actual damages.

To prevail on a claim for a negligent violation of the FCRA, a plaintiff must show "actual damages." 15 U.S.C. § 1681o; *see also Collins*, 775 F.3d at 1335 (remanding case to district court "to analyze whether Collins' evidence of emotional distress was sufficient to present a jury question on actual damages"). Judge Cannon's determination that Plaintiff has presented sufficient evidence to create a fact issue as to actual damages is misplaced for two reasons.

First, Judge Cannon's analysis elides the difference between Article III standing and actual damages under the FCRA. Citing *Losch*'s discussion of standing, she concludes that the "injury a plaintiff must suffer to have standing to assert an FCRA violation . . . informs what damages a plaintiff must show under Sections 1681n and 1681o." R&R at 28. But the inquiries for standing and actual damages are distinct. Standing is a judicial doctrine created to assure that federal courts do not overstep their authority under Article III of the United States Constitution. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). By contrast, the FCRA's requirement of "actual damages" reflects Congress's determination of the showing needed to establish a negligent violation of that statute. *See* 15 U.S.C. § 1681o. While injury-in-fact and actual damages are related concepts, they are not the same. Thus, in *Doe v. Chao* the Supreme Court, considering a remedial provision similar to the FCRA's, held that even though the defendant's Privacy Act violation caused "injury enough to open the courthouse door" by establishing Article III standing, the plaintiff could not prevail on the merits of his claim because he did not suffer actual damages. 540 U.S. 614, 624 (2004). *See also Hickman v. Experian Info. Sols., Inc.*, No. 1:17-CV-00388-LMM-JFK, 2019 WL 2306198, at *1 (N.D. Ga. Mar. 11, 2019) ("While Plaintiff cannot adequately prove actual damages, Plaintiff sufficiently stated injury in fact for the purposes of standing."). The standing inquiry in the

FCRA context is relevant to whether consumers are entitled to pursue statutory and punitive damages under 15 U.S.C. 1681n. *See Ramirez*, 141 S. Ct. 2190, 2212 (2021) (holding that class members inaccurately identified to third parties as potential matches to a terrorist database had standing to pursue statutory damages under § 1681n while class members whose reports were not provided to third parties lacked standing). The standing inquiry does not impact the statutory meaning of the FCRA's actual damages requirement.

Second, Plaintiff does not present sufficient evidence to show that Experian's reporting caused any damages. There is no evidence that Experian's reporting of Plaintiff's MoneyLion debt caused any harm to her credit. ECF No. 49-8, Plf. RFP. Nos. 8, 9, 19; ECF No. 49-10, Benjamin Dep. Tr. 49:20-50:9; 57:4-21; 58:10-21; 59:9-11; 63:4-7. This is unsurprising in light of Plaintiff's recent bankruptcy, as "[i]t is well known that filing for bankruptcy negatively affects a consumer's credit." *Peterson v. Experian Info. Sols., Inc.*, No. CV 20-606(DSD/ECW), 2021 WL 3116073, at *3 (D. Minn. July 22, 2021) (citing *Jaras v. Equifax, Inc.*, 766 F. App'x 492, 494 (9th Cir. 2019)). The only evidence of damages Plaintiff has provided is uncorroborated testimony that she experienced stress, anger, and some lack of sleep after she reviewed a credit report Experian provided only to her. *See* Doc. 49-10, Benjamin Dep. Tr. 40:8-15; 64:12-64:18; 69:20-70:5. Judge Cannon concluded that

this testimony was sufficient to create a fact issue as to whether she experienced actual damages, finding that Experian's argument to the contrary was foreclosed by *United States v. Stein*, 881 F.3d 853, 859 (11th Cir. 2018). But this overreads *Stein*, in which the Eleventh Circuit held "only that the self-serving and/or uncorroborated nature of an affidavit cannot prevent it from creating an issue of material fact." *Stein*, 881 F.3d at 859. "We do not mean to suggest that a self-serving and/or uncorroborated affidavit will always preclude summary judgment." *Id.*

In particular, *Stein* does not mean that self-serving or uncorroborated testimony is always sufficient to create an issue of material fact regarding a claim for emotional distress damages. Prior to *Stein*, courts in the Eleventh Circuit found a consumer's uncorroborated testimony was sufficient to create an issue of material fact only when there was some additional reason to conclude that the consumer was injured. *Compare Moore v. Equifax Info. Servs., LLC*, 333 F. Supp. 2d 1360, 1365 & n. 3 (N.D. Ga. 2004) (holding that "a plaintiff is not required to produce evidence of emotional distress beyond his own testimony") *with Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1268 (S.D. Fla. 2009) (finding plaintiff's uncorroborated testimony insufficient to create a fact issue on emotional distress and distinguishing *Moore* because there the distress was linked to an "identifiable instance where the plaintiff was humiliated when incorrect credit information was published to a third

party"). This is consistent with the Eleventh Circuit's treatment of actual damages in other contexts. In *Akouri v. Fla. Dep't of Transp.*, for example, the court recognized nine factors, including the degree of emotional distress, the context of the events surrounding the emotional distress, and whether the plaintiff suffered a physical injury, relevant to a determination of whether evidence of emotional distress is sufficient to create a jury question. 408 F.3d 1338, 1345 n 5 (11th Cir. 2005) (citation omitted). *Losch* is not to the contrary. The plaintiff in that case spent 400 hours attempting to correct the inaccuracies on his credit report. *Losch*, 995 F.3d at 943. Here, by contrast, Plaintiff never attempted to contact Experian regarding its reporting and has presented no evidence that Experian's reporting affected her in any way separate from her review of the her May 9 credit report.  Thus, there is no basis that a rational jury could find that any of Plaintiff's purported emotional distress was caused by Experian's preparation of an inaccurate consumer report under § 1681e(b), her sole claim.

### III.   CONCLUSION

For the foregoing reasons, Experian requests that the Court reject the Magistrate Judge's Final Report and Recommendation and grant Experian's motion for summary judgment in its entirety.

Dated: August 18, 2021                    Respectfully submitted,

                                          */s/ Eric A. Nicholson*
                                          Eric A. Nicholson (*pro hac vice*)
                                          Michigan Bar No. 83825
                                          **Jones Day**
                                          150 West Jefferson, Suite 2100
                                          Tel:  (313) 230-7927
                                          Fax: (313) 230-7997
                                          eanicholson@jonesday.com

                                          Andrew M. Ellis
                                          Georgia Bar No. 536041
                                          **Jones Day**
                                          1221 Peachtree Street, N.E.,
                                          Suite 400
                                          Atlanta, GA 30361
                                          Tel:  (404) 581-8721
                                          aellis@jonesday.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1C of the Northern District of Georgia, using 14-point Times New Roman font, as approved by the Court.

Dated: August 18, 2021                    Respectfully submitted,

*/s/ Eric A. Nicholson*
Eric A. Nicholson (*pro hac vice*)
Michigan Bar No. 83825
**Jones Day**
150 West Jefferson, Suite 2100
Tel:  (313) 230-7927
eanicholson@jonesday.com

*Counsel for Defendant*
*Experian Information Solutions,*
*Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on August 18, 2021, I served the foregoing document on all parties by filing on CM/ECF.

/s/ *Eric A. Nicholson*

*Counsel for Defendant Experian
Information Solutions, Inc.*